UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

**CATHOLIC CHARITIES OF
JACKSON, LENAWEE, AND
HILLSDALE COUNTIES**, and
**EMILY MCJONES**,

                      Plaintiffs,      **CASE NO: 24-cv-00718**

-vs-

                                      **HON: JANE M. BECKERING**

**GRETCHEN WHITMER**, et.al.

                      Defendants.

---

**COUNCIL ON AMERICAN ISLAMIC RELATIONS- MICHIGAN
AMICUS CURIAE BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………iii

INTEREST OF AMICUS CURIAE……………………………………………...1

FACTUAL BACKGROUND……………………………………………………2

    I. Mainstream Islamic Teachings on Gender and Sexuality…………..……….2

        a. Gender is a Biological Binary……………………………………2

        b. Companionship and Marriage from an Islamic Perspective Can Only Exist Between a Man and Woman…………………………………..3

        c. Cultivating Behavior in Line with One's Biological Gender is an Islamic Obligation…………………………………………………5

    II. Muslim's Desire for Treatment and Therapists with a Shared Religious Experience……………………………………………………………..6

    III. Concerns of Muslim Practitioners Following the Enactment of HB4616 and HB4617…………………………………………………………………7

ARGUMENT……………………………………………………………………..8

    I. HB4616 and HB4617 Threaten to Compel Speech and Have Already Chilled Speech of Muslim Therapists…………………………………..8

        a. Law…………………………………………………………..8

        b. Analysis…………………………………………………………9

CONCLUSION………………………………………………………………...14

## TABLE OF AUTHORITIES

**FEDERAL CASE LAW**

*303 Creative LLC v. Elenis*, 600 U.S. 570; 143 S. Ct. 2298; 216 L. Ed. 2d 1131 (2023)

*Ashcroft v. Free Speech Coal.*, 535 U.S. 234; 122 S. Ct. 1389; 152 L. Ed. 2d 403 (2002)

*Boy Scouts of America v. Dale,* 530 U. S. 640; 120 S.Ct. 2446; L.Ed.2d 554 (2000)

*Wooley v. Maynard*, 430 U.S. 705; S. Ct. 1428; L.Ed.2d. 752 (1977)

## *INTEREST OF AMICUS CURIAE*

Amici, Council on American Islamic Relations-Michigan ("CAIR-MI") is an Islamically focused non-profit organization representing Muslims and Muslim organizations across the state of Michigan. CAIR-MI is local chapter of a grassroots funded non-profit civil rights and advocacy organization whose mission is to enhance the rights of Muslims through education, mediation, media and the law.

Fundamental to CAIR-MI's core mission is ensuring the rights of Michigan's Muslim to enjoy the freedom of speech and freedom of expression that are afforded to all individuals in the U.S. through the First Amendment of the U.S. Constitution, including in their individual and professional capacities. As such amicus have an interest in ensuring that the enactment, enforcement, or threat of enforcement of HB 4616 and HB 4617 does not act to chill speech or punish Muslim social workers and therapists for engaging in legitimate therapeutic practices that align with the therapists' and/or patients sincerely held religious beliefs.

Consistent with Federal Rules of Civil Procedure, amicus states that no counsel for a party authored this brief in whole or in part, and no person or entity, other than amicus and its counsel, has contributed money that was intended to fund preparing or submitting this brief. All parties provided consent for amici curiae to file this brief.

## FACTUAL BACKGROUND

### I. *Mainstream Islamic Teachings on Gender and Sexuality*

#### a. *Gender is a Biological Binary*

According to normative mainstream Islamic teachings there are only two genders which are determined by biological considerations alone. In the Islamic holy book , the Quran,[1] Allah[2] describes the birth of Mary, the mother of Jesus when He says in part "But when she gave birth, she said, 'My Lord! I have given birth to a girl'- God knew best what she had given birth to: the male is not like the female." Surat 'Āli `Imrān 3:36. In this verse, Allah mentions what is an absolute and undeniable truth that a man is not like a woman, thereby providing clear guidance and proof for Muslims around the world that gender is an exclusively biological construct.

Throughout the Quran, Allah talks exclusively about gender as a biological and binary construct, indicating using the terms man and woman and stating affirmatively that they are uniquely designed.  In Surah 92 verse 3 of the Quran it states "And [by] He who created the male and female." Allah addresses humankind in terms of gender by using the terms "male" and "female," exclusively. For instance,

---

[1] The Qur'an is the book containing the holy scripture of Muslims worldwide. It is the divine word of God as revealed to the Prophet Muhammad (peace and blessings be upon him) through the angel Jibril. The Qur'an has been memorized by Muslims world wide since its revelation and stands as the most authoritative text for Muslims.
[2] Allah is the Arabic word for God for the entire of the Arabic speaking  world including Muslim and Christian Arabs.

2

in Surat An-Naba' 124 Allah states, "Whoever, male or female, does good deeds and is a believer, then such people shall enter Paradise, and they shall not be wronged in the least." It is clear from a mainstream understanding of Islamic text, that there are exclusively two discrete genders- male and female- and that no third gender exists, nor does the idea of the absence of inclusion into one of the two binary genders exist within the Islamic framework. In the extremely rare case of a child being born as "intersex," it is the predominant view of Islamic scholars that such a person is assigned either the male or female gender prior to puberty based upon predominant traits in which one is typified by how the child urinates which includes the location of urination.[3]  Hence, traditional Islamic law makes no recognition of a third gender, simply male and female.  As such, normative mainstream Islamic teachings is that gender is an observable biological construct that is created at conception and cannot be changed.

   b. *Companionship and Marriage from an Islamic Perspective Can Only Exist Between a Man and Woman*

Additionally, mainstream Islamic theology provides that men and women are companions for each other, made to compliment each other, and provides that marriage is exclusively between a man and a woman. For instance, Allah states in Surah an-Najm verse 45 "And He created the pairs [spouses], males and females,"

---

[3] Al-Maqdisi, Ibn Qudamah. *Al-Mughi*, v. 10, pp. 94 – 95 (Riyadh: Dar al-'Alam al-Kutub, 1997)

Quran 54:45. and further in Surat An-Naba' verse 8 "And We have created you in pairs."  The Quran further explains "And of His signs is that He created for you spouses from among yourselves so that you may find comfort in them. And He has placed between you compassion and mercy. Surely in this are signs for people who reflect." Quran 30:21.

Allah details how men and women are so close that they are "garments" for one another. Surat Baqarah 2:187. The Quran further describes this closeness between men and women by stating that "The believers, both men and women, support each other." Surat At-Tawbah 9:7.

In addition to providing companionship through complimentary traits, the Qur'an further reveals that the purpose of marriage and of the union between men and women is to create offspring. In Surah an-Nisaa verse 1 it states, in part, "People, be mindful of your Lord, who created you from a single soul, and from it created its mate, and from the pair of them spread countless men and women far and wide." This verse outlines the creation of man by the first man Adam and the creation of his mate, Hawa (Eve) from a single soulso that they could dwell together and create children. For mainstream normative Islamic thought, this verse is definitive that marriage must be between a biological male and a biological female, for any other marriage, could not by its very nature, produce offspring.

c. *Cultivating Behavior In Line with One's Biological Gender is an Islamic Obligation*

Muslims around the world follow not only what is in the Quran, but they also look to the life of the Prophet Muhammad (pbuh),[4] to guide their religious beliefs and expression. The sayings and actions of the Prophet Muhammad are known as his "sunnah" and "hadith" and have been transmitted down through chains of narrators in an oral tradition beginning during his lifetime. Some such sayings and guidance provided by the Prophet Muhammad provide clear guidance that it is impermissible for humankind to behave in a way that does not comport with their biological gender.

In one such transmission a companion of the Prophet, Ibn Abbas, relates that the Prophet Muhammad "cursed those men who assume the mannerisms of women and those women assume the mannerisms of men." Sahih al-Bukhari Vol. 7, Book 72 Hadith 774. As further evidence of imitating one's opposite gender being forbidden in mainstream Islamic teachings is when the Prophet Muhammad (pbuh) speaks with his companions about those who will earn disfavor on the Day of Judgement. He (pbuh) is quoted as having said, "There are three at whom Allah will not look on the

---

[4] When Muslims say the name of the prophet Muhammad they follow it by saying "Peace and Blessings be upon him," as part of their sincerely held faith traditions. In writing this is often shortened to "pbuh."

Day of Resurrection: The one who disobeys his parents, the manly woman…" Sunan an-Nasa'I Vol. 3, Book 23, Hadith 2563.

II. *Muslim's Desire for Treatment and Therapists with a Shared Religious Experience*

As part of its normal business, CAIR-MI receives intakes daily from Muslims across the state of Michigan. These intakes often involve complaints of discrimination, Islamophobia, or requests for assistance and advocacy. As a trusted and well-known organization assisting Muslims in Michigan, CAIR-MI routinely receives requests for referrals to outside agency and private resources, including requests from Muslims seeking faith based therapy and mental health services.

Those calls from Muslims seeking referrals to mental health and therapy-based services involve requests of adults seeking assistance for themselves or members of their families. CAIR-MI has received recalls from parents who have children and young teens who are struggling with a host of issues including drug or alcohol abuse and gender identity and sexuality issues. Also, in the recent calls we've received looking for resources are older teens and young adults who are struggling with a host of issues.

The common theme amongst all the intakes received by CAIR-MI for therapeutic or mental health services from Muslims in Michigan is that the caller is always looking for a Muslim therapist or a Muslim organization that could provide their

desired services. The individuals seeking CAIR-MI's referral have all expressed the importance of receiving treatment from someone who shares the same faith understanding as them and their family. These callers have expressed a desire to receive treatment that comports with their sincerely held religious beliefs and practices, and the desire to obtain services that are in line with the parameters of their faith.

### III. *Concerns of Muslim Practitioners Following the Enactment of HB4616 and HB4617*

Core to CAIR-MI's mission is reviewing proposed and enacted legislation to determine the impact on the Muslim community in Michigan. This is especially true, when a law or policy directly affects or implicates religious liberties, First Amendment rights, or has a potential to negatively impact religious expression of Muslims. After the enactment of HB 4616 and HB 4617, CAIR-MI began receiving calls from concerned Muslim mental health professionals and Muslim organizations providing mental health services regarding the implications of enforcement of HB 4616 and 4617 on professionals. The professionals were requesting that CAIR-MI provide an analysis of their exposure to liability, loss of licensure, and fines as well as other ramifications, should they engage in therapeutic talk therapy that aligns with their own and/or their patients' sincerely held religious beliefs.

These professionals all expressed great concern that valuable talk therapy involving adolescents, teens and young adults experiencing gender dysphoria and

7

same sex attraction that was focused on a patient's desire to maintain their identity and attractions within the bounds of their religious beliefs would be prohibited. According to these professionals, there is significant benefit when religious and spiritual beliefs are incorporated into mental health treatment. Their belief is that by the enactment of HB4616 and HB 4617, those seeking mental health services that was directed by and aligned with their religious beliefs would be without anywhere to turn. They expressed further concern that patients seeking religiously grounded treatment would be coerced through state requirements into treatment that would seek to push them father away from their religious beliefs or otherwise drive them away from seeking treatment all together.

## ARGUMENT

I. <u>HB4616 and HB4617 Threaten to Compel Speech and Have Already Chilled Speech of Muslim Therapists</u>

**(a) <u>Law</u>**

The Free Speech Clause of the First Amendment was designed to protect the "freedom to think as you will and to speak as you think." *303 Creative LLC v. Elenis*, 600 U.S. 570, 584, 143 S. Ct. 2298, 2310, 216 L. Ed. 2d 1131 (2023) (quoting *Boy Scouts of America v. Dale,* 530 U. S. 640, 660–661, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000)). Indeed, in the *Boy Scouts of America* case, the Supreme Court held that the state could not force an individual or group to "Propound a point of view contrary to its beliefs." *Boy Scouts of America at* 654; 2446.

Furthermore, the Supreme Court has held time and time again that, the "First Amendment protects an individual's right to speak his mind regardless of whether the government considers his speech sensible and well intentioned or deeply "misguided." *303 Creative LLC* at 586 (quoting *Hurley*, 515 U. S., at 574, 115 S. Ct. 233).

In *303 Creative LLC*, the Supreme Court held that "Generally, too, the government may not compel a person to speak its own preferred messages." *Id* (citing *Tinker v. Des Moines Independent Community School Dist.*, 393 U. S. 503, 505–506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969)).

Statutes that provide even "minor punishments" may chill protected speech. **See Generally**, *Wooley v. Maynard*, 430 U.S. 705, 97; S. Ct. 1428, 51, L.Ed.2d. 752 (1977). The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere. *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244, 122 S. Ct. 1389, 1399, 152 L. Ed. 2d 403 (2002).

### (b) <u>Analysis</u>

There are several ways that CAIR-MI has observed the enactment of HB 4616 and 4617 both chill the speech of Muslim therapists and social workers and has created a fear that indeed it would compel them to speak other than what they think or compound a viewpoint that is contrary to their own.

It is clear from the examples outlined below, that the law as enacted the State of Michigan has taken an affirmative position on the message that therapists and social workers are required to propound- to affirm the youth and adolescents gender dysphoria and same sex attraction. Their position is clear in the enactment of HB 4616 and 4617 when they prohibit treatment that prohibits any contradictory view to their preferred message. This is in direct contravention of the ruling of the Supreme Court in 303 Creative LLC.

Additionally, HB 4616 provides not just minor punishments for failure to comply with propounding the State's preferred message, but rather it provides severe punishments including monetary fines and loss of licensure. The objective intent of providing such severe punishments for therapists and counselors who fail to propound the State's preferred stance on gender dysphoria and same sex attraction is to chill any contradictory viewpoint.

There are several ways in which CAIR-MI has seen the enactment of HB 4616 and HB 4617 chill the speech of Muslim mental health professionals and professional organizations in contravention of U.S. Supreme Court precedent on First Amendment Rights. From the calls and intakes received by CAIR-MI, there are three that stand out as examples of the harm already caused by the enactment of HB4616 and HB4617.

One such call was from a licensed social worker who had been in practice for over a decade, was well known and respected in and outside of the Muslim community and was a professor at a local university. As a result of the enactment of the two subject laws, this social worker stopped treating patients all together. The reason she expressed to CAIR-MI that she stopped treating patients was directly related to her fear that she could not adequately treat Muslim patients who came to her seeking therapy for gender dysphoria or same sex attraction that was aligned and consistent with their religious beliefs on these issues.

A second notable call of concern that CAIR-MI received was from a social worker who was working on a provisional license as a school counselor in a public school. This professional expressed to CAIR-MI that the vast bulk of students who sought assistance in the school counselor's office were seeking assistance with gender dysphoria and/or same sex attraction and were between the ages of eleven and fourteen. This professional was working in a school district that serviced both Muslim students as well as students of other faiths. The school counselor indicated that some of the students struggled to reconcile their feelings with their religious identity and beliefs. As a result of HB 4616 and HB 4617 the counselor felt like she couldn't provide resources to the students in line with what their expressed needs were, and as a result, she has left her position as a school counselor. This individual is now a fully licensed social worker, who left the school and is grappling with

whether she can engage in a private practice providing mental health services to the Muslim community, despite her desire to provide services that are integrated with her and her client's spiritual and religious beliefs. For this professional the dilemma posed with the enactment of the subject laws is especially harmful as she reported to CAIR-MI that she pursued a degree and license in social work specifically to give back to her community and help Muslims, especially the youth, navigate complex mental health issues with religious focused treatment centered around the Islamic faith.

Additionally, CAIR-MI heard from an Islamic non-profit social services organization based here in Michigan. That social services organization provides resources for individuals with housing and food insecurity and provides mental health services from an Islamic perspective and with a religious and spiritual focus. This organization has been a pillar amongst the resources available for Muslims in Michigan and is sought out for its Islamic centered counseling services.

The organizational leaders and licensed social worker have expressed concern over whether they could lawfully treat Muslim youth and adolescents who are experiencing gender dysphoria and same sex attraction who have come to them seeking therapeutic services in line with their sincerely held religious beliefs with an aim of aligning their behaviors with their Islamic faith. Additionally, the social services organization is worried that HB4616 and HB4617 when acting in

12

conjunction with Michigan's expanded Elliot Larsen Civil Rights Act as codified in 2023 could act in a manner to compel the speech of its licensed social worker in a manner that is contradictory to the organization's religious beliefs and mission.

The concern of the non-profit was complicated by the knowledge that Muslims seeking counseling for gender dysphoria and/or same sex attraction that aligned with their religious beliefs would be without a place to obtain such a treatment and alternatively that the organization itself may be forced to provide counseling in a manner that was in direct contradiction to the purpose and faith values of the organization.

The organization's concerns over being coerced to provide counseling in a manner that is in abject opposition to their sincerely held faith traditions and beliefs is only compounded by the enactment of the expansion to the Elliot Larsen's Civil Rights ("ELCRA") Act in 2023 which codified protections for individuals with gender dysphoria and sexual orientation without providing an express religious exemption for religious based organizations.[5] According to a strict reading of the law, even a strictly defined religious non-profit organization who fails to offer counseling services to individuals facing gender dysphoria or same-sex attraction could be

---

[5] See ,Michigan, Act No. 6, Public Act of 2023. See also: https://www.legislature.mi.gov/documents/2023-2024/billanalysis/Senate/htm/2023-SFA-0004-N.htm: See Further https://www.detroitnews.com/story/opinion/2023/02/19/long-and-walid-civil-rights-include-religious-protection-opinion/69915728007/

found in violation of ELCRA.[6] The requirements of ELCRA without an express religious protection, in addition to the prohibitions of HB4616 and HB4617 creates a mandate that this religious non-profit social services organization will be required to provide counseling and therapy services that are in direct contradiction with the organizations stated mission and sincerely held religious beliefs. This is true because the organization would have to both comply with HB4616 and ELCRA or could face sanctions for violating one or the other.

## CONCLUSION

The Court should grant preliminary injunction in this matter should be granted on the basis that the statute seeks to prohibit some speech while compelling other speech making it objectively unconstitutional.

CAIR-MI is of the opinion that the enactment and enforcement of HB 4616 and HB 4617 unjustly burdens the Muslim community, by (1) forcing Muslim mental health professionals to propound a viewpoint that is not in line with their own sincerely held religious beliefs; (2) leaving Muslims who desire mental health professionals who have a shared religion and viewpoint with nowhere to turn for treatment; and (3) prohibiting Muslims from obtaining mental health treatment on the issues of gender dysphoria and sexual orientation that aligns with their sincerely

---

[6] See: https://www.michbar.org/file/barjournal/article/documents/pdf4article4145.pdf

held religious beliefs with a desired outcome of bringing their behaviors in line with those beliefs through threat of punishment of mental health professionals who engage in their treatment.

DATED: August 13, 2024               Respectfully Submitted,

                                                                     **CAIR-MI LEGAL FUND**

                                                                     /s/ Amy V. Doukoure
                                                                     Amy V. Doukoure (P80461)
                                                                     1905 S. Haggerty Road, Suite 5
                                                                     Canton, MI  48188
                                                                     (248) 559-2247
                                                                     adoukoure@cair.com

                                                                     *Counsel for CAIR-MI as Amicus Curiae*